# COMMONWEALTH OF VIRGINIA



ARLINGTON CIRCUIT COURT
Civil Division
1425 NORTH COURTHOUSE RD
ARLINGTON VA
(703) 228-7010

Proof of Service

Virginia:
In the ARLINGTON CIRCUIT COURT

Case number: 013CL25005277-00
Service number: 001
Service filed: November 25, 2025
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: OWEN SIMPSON  vs RICKY LAMBERTH
Service on: RICKY JOE LAMBERTH                          Attorney:
          5729 CALVERTON STREET
          CATONSVILLE MD 21228-1706

Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, November 25, 2025 with a copy of the
Complaint filed Tuesday, November 25, 2025 attached.

Hearing date  :
Service issued: Tuesday, November 25, 2025

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



ARLINGTON CIRCUIT COURT
Civil Division
1425 NORTH COURTHOUSE RD
ARLINGTON VA
(703) 228-7010

Summons

To: RICKY JOE LAMBERTH
    5729 CALVERTON STREET
    CATONSVILLE MD 21228-1706

Case No. 013CL25005277-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, November 25, 2025

Clerk of Court: PAUL F. FERGUSON

by _____
                        (CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name:

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR ARLINGTON COUNTY

| | |
|---|---|
| **OWEN SIMPSON** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**RICKY JOE LAMBERTH** )<br>)<br>**Serve:** )<br>)<br>Ricky Joe Lamberth )<br>5729 Calverton Street )<br>Catonsville, MD 21228-1706 )<br>)<br>**Defendant.** )<br>) | Case No.: _____ |

RECEIVED

NOV 2 5 ~~~

PAUL FERGUSON
Arlington County Circuit Clerk
by _____ Deputy Clerk

### COMPLAINT

Plaintiff Owen Simpson ("Simpson" or "Plaintiff"), by counsel, and in support of this

Complaint against Defendant Ricky Lamberth ("Lamberth" or "Defendant"), states as follows:

## I.   INTRODUCTION

1.      This is a defamation claim brought by Simpson against Lamberth for the

publication of multiple false and defamatory statements made on the website

militarycorruption.com. The defamatory posts were part of a plan to defame Simpson and cause

his professional downfall through defamation. In the false statement, Lamberth accuses Simpson

of being a "sexual predator," among other repeated allegations of sexual harassment. Lamberth's

false and defamatory statements damaged Simpson's personal and professional reputation by

accusing him of sexual misconduct. Lamberth made these false and defamatory statements as a

form of retaliation for a negative performance review that Simpson gave to Lamberth. This

defamation suit seeks redress for the damages that Simpson suffered and will suffer as a result of the defamatory publication by Lamberth, which subjected him to undeserved scorn, embarrassment, humiliation, and contumely in his personal and professional communities.

## II.    PARTIES

2.    Plaintiff Owen Simpson is a resident of Arlington County, Virginia.

3.    Defendant Ricky Lamberth is a resident of Maryland.

## III.    JURISDICTION AND VENUE

4.    Venue is properly laid in this Court pursuant to Section 8.01-262 of the Virginia Code because the cause of action, in whole or in part, arose in and occurred in Arlington County; and there is a close and substantial nexus to Arlington County.

5.    This Court possesses subject-matter jurisdiction over this matter.

6.    This action arises under Virginia law because Lamberth's statements were published to Virginia residents and caused ultimate injury to Simpson in Virginia.

7.    This Court has personal jurisdiction over Lamberth under Virginia's long-arm statute, Va. Code § 80.1-328.1(A)(1), (A)(3), and (A)(4), as well as the Due Process Clause of the United States Constitution. The claims in this Complaint arise, in part, from Lamberth's tortious conduct which caused injury in Virginia. Exercising jurisdiction over Lamberth would not offend traditional notions of fair play and substantial justice because Lamberth deliberately targeted Simpson, who is a Virginia resident, by making false and defamatory statements about him in Virginia.

8.    The events in which Lamberth accuses Simpson of being a "sexual predator" occurred at the Pentagon in Arlington County, Virginia, and, thus, are of particular importance to Virginians. The injury resulting from Lamberth's tortious conduct occurred within Virginia.

2

9.      Lamberth injured Simpson in the Commonwealth of Virginia by his conduct outside the Commonwealth. In doing so, Lamberth was aware that Simpson was a resident of Virginia and that the matters discussed on militarycorruption.com primarily concerned and were of concern to Virginians, given that the conduct discussed and people referenced in this article all worked in Virginia. Lamberth knew that Simpson worked in Virginia and, thus, his publications were intended to target and incite a Virginia audience.

10.     Lamberth's statements, published to persons in Virginia, ultimately resulted in injury to Simpson in Virginia. Lamberth's false and defamatory statements were directed at, received, viewed, and heard by individuals in Virginia. As a result, Simpson has experienced irreversible personal and professional damage in Virginia, including reputational harm, the loss of business opportunities in Virginia, irreparable damage to his standing within the defense and national security community in Virginia and surrounding areas, and the loss of friendships with individuals in Virginia.

11.     Upon information and belief, Lamberth regularly does and/or solicits significant business in Virginia and engages in other persistent courses of conduct, such that he has made minimum contacts with the Commonwealth and has purposefully availed himself of its laws.

12.     Upon information and belief, a substantial number of readers of militarycorruption.com are Virginia residents and are targeted by Lamberth, because Simpson is a resident of Virginia and was a central focus of the topic of discussion in the article published on militarycorruption.com.

13.     Lamberth purposefully availed himself of Virginia, by reporting on events concerning the Virginia defense and national security community. Based on information and belief, Lamberth also regularly works in Virginia.

3

14.    Accordingly, Lamberth should have foreseen that he would be forced to answer for his tortious conduct, and resulting injuries to Simpson, in a Virginia court.

## IV.    FACTUAL BACKGROUND

16.    Simpson is the Deputy Director of the Security and Facilities Office within the Directorate of Business Operations for the Under Secretary of War for Acquisition and Sustainment.

17.    Simpson leads and supervises a team supporting over 1,800 personnel across approximately 90 facilities, overseeing enterprise Security, Facilities, and Physical Security operations. He directs daily mission execution, integrates strategy across all lines of effort, and ensures superior customer service. He serves as a Trusted Agent to an Insider Threat Program and leads efforts to protect personnel, property, and information for his agency. He coordinates with senior leadership, law enforcement, counterintelligence, and behavioral health experts to manage threats and drive risk mitigation.

18.    From November of 2023 until March 10, 2025, Lamberth was detailed under Simpson and required to report to Simpson.

19.    Specifically, Lamberth was a member of the Defense Logistics Agency ("DLA"). DLA has an agreement to detail personnel to Simpson's agency (*i.e.*, the Under Secretary of War for Acquisition and Sustainment). Besides Mr. Lamberth, there are several DLA members detailed to Simpson's agency.

20.    Throughout their professional relationship, Simpson primarily worked from the Pentagon and had very little in-person contact with Lamberth, as Lamberth worked remotely.

21.    Specifically, Simpson only interacted with Lamberth face-to-face a total of three times (and for a total of roughly 30 minutes) during their 18-month professional relationship.

4

22.     The first time Simpson interacted with Lamberth was in the Fall of 2023 at the Pentagon. This was the first time Simpson met Lamberth and the meeting lasted for less than 15 minutes.

23.     The second time Simpson interacted with Lamberth was January 9, 2024 at the Pentagon. Lamberth, at the time, was an Operations Security program manager and was participating and representing Simpson's agency at a multiagency awareness day. Simpson and Lamberth interacted for less than 10 minutes during this meeting.

24.     The third time Simpson interacted with Lamberth was September 4, 2024. Lamberth attempted to enter the Pentagon, but was not permitted to enter by the Pentagon Force Protection Agency ("PFPA"). An official from PFPA called Simpson to notify him that Lamberth was waiting outside of the Pentagon visitor entrance to pick up a handicap parking permit. Simpson met Lamberth outside and informed him that he could leave the Pentagon and return home and that they could coordinate the pickup of the handicap parking pass on a different date.  This interaction lasted between five and ten minutes.

25.     While Simpson's in-person interactions with Lamberth were limited, he managed Lamberth remotely on a daily basis and instructed him on how to perform his job.

26.     Lamberth's job performance and conduct were not satisfactory under Simpson and Simpson, in conjunction with Lamberth's agency, reprimanded Lamberth for conduct unbecoming and found that his performance was unsatisfactory.

27.     To retaliate against Simpson, Lamberth filed sexual harassment complaints against Simpson and accused Simpson of sexual harassment and being a sexual predator.

28.     All of Lamberth's claims for sexual harassment lacked merit and no action was taken against Simpson as a result of Lamberth's baseless claims.

5

29.    Continuing to seek retribution, Lamberth began defaming Simpson on militarycorruption.com.

## V.    DEFAMATORY STATEMENTS

30.    Lamberth published his defamatory statements in at least one article on militarycorruption.com and took particular efforts to target Simpson's professional network and personal reputation.

31.    Specifically, on January 29, 2025, Lamberth made numerous statements falsely accusing Simpson of being a "sexual predator" and falsely accused him of other sexual misconduct as well. *See* Exhibit 1 at p. 6.

32.    As part of the article on militarycorruption.com, Lamberth falsely stated that:

   a)    Simpson "got upset" after Lamberth "rebuff[ed] his sexual advances," thereby directly stating and/or implying that Simpson had made "sexual advances" towards Lamberth at work. *Id.* at p. 3.

   b)    Simpson made "repeated sexual advances" toward Lamberth at work, thereby directly stating and/or implying that Simpson was sexually harassing Lamberth at work. *Id.* at p. 4.

   c)    Lamberth "rebuked the sexual harassment," thereby directly stating and/or implying that Simpson was sexually harassing Lamberth at work. *Id.*

   d)    Simpson was a "sexual predator." *Id.* at p. 6.

   e)    Simpson had made "sexual harassment demands" of Lamberth at work, thereby directly stating and/or implying that Simpson was sexually harassing Lamberth at work. *Id.*

33.    All of the statements contained in Paragraph 32 of this Complaint were of and

6

concerning Simpson.

34.     These allegations are not only false, but are defamatory *per se*.

35.     Specifically, these statements prejudice Simpson in his profession because they falsely accuse him of being a "sexual predator," making "sexual advances" toward Lamberth, and engaging in repeated sexual harassment of Lamberth while at work.

36.     These statements are also defamatory *per se*, because they accuse Simpson of a crime of moral turpitude.

37.     Each of the above statements were of and concerning Simpson and either directly defamed Simpson through the quoted statements or the implication and context in which the quoted statements were made imply that Simpson was a "sexual predator" or engaged in misconduct by sexually harassing Lamberth at work.

## VI.    ALL OF THE ABOVE DEFAMATORY STATEMENTS OF AND CONCERNING PLAINTIFF ARE FALSE

38.     As a result of the above defamatory statements (*i.e.*, accusations that Simpson is a "sexual predator" and that he sexually harassed Lamberth), Simpson has been questioned by members of his professional network and humiliated in his community.

39.     All of these defamatory statements are false. Simpson has never sexually harassed or preyed on anyone in a sexual manner.

40.     The defamatory statements identified above were of and concerning Simpson.

41.     The statements are defamatory *per se* because they prejudice Simpson in his profession or trade and impute an unfitness to perform the duties of an office or employment of profit, or a want of integrity in the discharge of the duties of such an office or employment.

42.     The statements are also defamatory *per se* because they impute the commission of a crime involving moral turpitude.

7

43.    Lamberth published the defamatory statements of and concerning Simpson with actual malice, *i.e.*, knowledge of falsity or reckless disregard for truth or falsity.

44.    Specifically, Lamberth knew these statements were false because he only had three face-to-face interactions with Simpson—totaling roughly 30 minutes—and every interaction was in a public setting, thereby extinguishing any possibility that Simpson could have sexually harassed Lamberth or preyed on him in a sexual manner.

45.    Moreover, Lamberth filed several complaints against Simpson for sexual harassment and no action was taken against Simpson as a result of Lamberth's false complaints, confirming that Lamberth's claims lacked merit.

46.    Alternatively, Lamberth acted negligently in failing to ascertain the facts on which his statements relied, and, therefore, was negligent and/or reckless in publishing those statements concerning Simpson.

47.    Lamberth failed to corroborate any of the false statements he made by investigating the veracity of his statements.

48.    Lamberth made the defamatory statements to damage Simpson's reputation and interfere with his professional and personal relationships throughout his personal and professional communities.

49.    Lamberth's publication of the defamatory statements damaged Simpson's reputation throughout his community, but particularly among members in his professional network.

50.    Since Lamberth defamed Simpson, he has had to respond to inquiries from members of his community that have heard and/or read the defamatory statements.

51.    Specifically, Simpson was forced to respond to informal and formal Equal

8

Employment Opportunity Commission inquiries and several co-workers, supervisors, and subordinates were called to provide declarations in this matter. Simpson was also required to disclose these statements to Pentagon Force Protection Agency, Defense Counterintelligence and Security Agency, Defense Logistics Agency, Washington Headquarters Services, and several members of Simpson's agency.

52.    These inquiries were incredibly embarrassing and tarnished Simpson's reputation.

53.    Simpson has incurred costs associated with defending his reputation from these false.

## COUNT I
### Defamation

54.    Plaintiff incorporates by reference each of the allegations set forth in Paragraphs 1–53 above.

55.    Lamberth's defamatory statements about Simpson falsely state that:

a)  Simpson "got upset" after Lamberth "rebuff[ed] his sexual advances," thereby directly stating and/or implying that Simpson had made "sexual advances" towards Lamberth at work. Exhibit 1 at p. 3.

b)  Simpson made "repeated sexual advances" toward Lamberth at work, thereby directly stating and/or implying that Simpson was sexually harassing Lamberth at work. *Id.* at p. 4.

c)  Lamberth "rebuked the sexual harassment," thereby directly stating and/or implying that Simpson was sexually harassing Lamberth at work. *Id.*

d)  Simpson was a "sexual predator." *Id.* at p. 6.

9

e)  Simpson had made "sexual harassment demands" of Lamberth at work, thereby directly stating and/or implying that Simpson was sexually harassing Lamberth at work. *Id.*

56.    Lamberth published the defamatory statements of and concerning Simpson via militarycorruption.com.

57.    Lamberth published the false and defamatory statements of and concerning Simpson with actual malice, *i.e.*, knowledge of falsity or reckless disregard for truth or falsity.

58.    Specifically, Lamberth knew these statements were false because he only had three face-to-face interactions with Simpson—totaling roughly 30 minutes—and every interaction was in a public setting, thereby extinguishing any possibility that Simpson could have sexually harassed Lamberth or preyed on him in a sexual manner.

59.    Moreover, Lamberth filed several complaints against Simpson for sexual harassment and no action was taken against Simpson as a result of these false complaints, confirming that Lamberth's claims had no merit.

60.    Lamberth either knew the statements he published concerning Simpson were false, or, believing them to be true, lacked reasonable grounds for such belief.

61.    The defamatory and false statements set forth in the preceding paragraphs of this Complaint substantially harmed Simpson's reputation and standing within his community and professional networks.

62.    Lamberth acted with malice and/or ill-will in defaming Simpson, as he began defaming Simpson once he realized his false and retaliatory complaints of sexual harassment were unsuccessful and no adverse action would be taken against Simpson.

63.    Lamberth published the defamatory statements without confirming the veracity of

10

his claims.

64.      The statements are so harmful to Simpson's reputation, that such statements lowered Simpson's reputation in his community and professional network and deterred third persons from interacting with him.

65.      As a direct and proximate result of Lamberth's defamation, Simpson suffered actual damages, including, but not limited to, impairment of reputation, diminished standing in the community, humiliation, injury, embarrassment, emotional distress, and mental anguish.

66.      Simpson is entitled to presumed damages because the false and defamatory statements made by Lamberth impute an unfitness to Simpson to perform the duties of an office or employment of profit, or a want of integrity in the discharge of the duties of such an office or employment, and prejudice Simpson in his profession or trade.

67.      Additionally, the statements are defamatory *per se* because they impute the commission of a crime involving moral turpitude.

68.      Accordingly, Lamberth's false and defamatory statements are defamatory *per se*.

69.      Simpson seeks punitive damages as redress for Lamberth's willful and malicious behavior.

**WHEREFORE**, the Plaintiff, Owen Simpson, moves this Court for entry of judgment against Defendant Ricky Joe Lamberth in the sum of $1,000,000 for compensatory damages, plus prejudgment interest thereon from January 29, 2025, pursuant to Virginia Code § 8.01-382. Plaintiff also moves this Court for the entry of judgment against Defendant Ricky Joe Lamberth in the sum of Three-Hundred-and-Fifty-Thousand Dollars ($350,000) for punitive damages.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,

11

OWEN SIMPSON
By Counsel

Lee E. Berlik (VSB No. 39609)
R. Jackson Martin, Of Counsel (VSB No. 80655)
BERLIKLAW, LLC
1818 Library Street
Suite 500
Reston, Virginia 20190
Tel: (703) 722-0588
LBerlik@berliklaw.com
JMartin@berliklaw.com

12

# EXHIBIT 1

# VOLUME II – LTC RICK LAMBERTH vs. PENTAGON DEI HIRES: LAMBERTH CHOSE NOT TO BECOME INVOLVED IN CONTRACT FRAUD, SO HE WAS UNCEREMONIOUSLY FIRED. HOW MANY OTHERS HAVE THEY DONE THIS TO? PENTAGON LEADERS SHOULD BE ASHAMED.



**Marine General Peter Pace & Retired Lieutenant Colonel Rick Lamberth at the Pentagon's "Hall of Heroes" Entrance, - Lamberth worked for GEN Pace at one time.**

Highlights in this Article

1. HIS BOSS WANTED HIM TO SHAKE DOWN A DOD CONTRACTOR FOR SOME EXTRA CASH
2. DOD CIVILIAN CAREER BRIEF ON LIEUTENANT COLONEL RICK LAMBERTH
3. LAMBERTH SAYS OJ SIMPSON GOT UPSET AFTER REBUFFING HIS SEXUAL ADVANCES
4. LAMBERTH LAYS OUT DOD MISMANAGMENT

https://militarycorruption.com/volume-ii-lamberth-vs-pentagon-dei/

5. NOTICE OF PROPOSED REMOVAL

6. SUMMARY:

UPDATE TO CASE OF LIEUTENANT COLONEL RICK LAMBERTH:

Previous Article: https://militarycorruption.com/rick-lamberth/



## HIS BOSS WANTED HIM TO SHAKE DOWN A DOD CONTRACTOR FOR SOME EXTRA CASH



**Karan Williams**

Karan Williams, GS-15, allowed to retire on or about 31 May 2024, after, according to LTC Lamberth discriminating, retaliating, and ordering Lieutenant Colonel Lambeth to help her extort funds from a DoD contractor in the Pentagon.

DEI SES still allowed to discriminate and retaliate against non-minority Whistleblowers of contracting fraud, waste, abuse, and mismanagement such as LTC Rick Lamberth, USA(Ret.) / GS-15. Management is afraid to do the right thing; yet espouses taking care of DoD personnel!

Definition: "Senior Executive Service" (SES) is a civil service classification in the United States federal government.

LTC Rick Lamberth, had retired from the Army then went back to work at the Pentagon as a civil service employee. at the Program Manager at DoD OSD OUSD(A&S) DBO Contracts.

On the 24th of April 2024, Lamberth was promoted to a GS-15, Program Analyst, NH-0343-04 and assigned to the Office of the Under Secretary of Defense (Acquisition & Sustainment) OUSD(A&S) the Director of Business Operations (DBO) Contracts Directorate working for Karan Williams, the Director of Contracts for the DBO.

His duties were to be serving as a Contracting Officer's Representative (C.O.R.) over one of two DoD Contracts that Karan Williams was the Director of for the DBO. For over 24 years, Lamberth had been trained and served as a C.O.R. on government contracts within the DoD either in the U.S. Army or as a DoD Civilian.

It was not uncommon for example, for Lamberth to have signed a Critical Acquisition Position (C.A.P.) Service Agreement with a start date of 04/24/2022, and a tenure ending period date of 04/24/2025.

The C.A.P. is required under the Defense Acquisition Workforce Improvement Act (DAWIA) is still in force and does not expire until 24 April 2025, which the OUSD(A&S) DBO is in violation of.

## DOD CIVILIAN CAREER BRIEF ON
## LIEUTENANT COLONEL RICK LAMBERTH

DoD CIVILIAN CAREER BRIEF for Lieutenant Colonel Rick Lamberth:

     License/Certification Acquisition Workforce Position / Date
     (Historical) AWCP Program Management Level 3 14-Nov-17
     (Historical) AWCP Acquisition Logistics Level 2 14-Aug-15
     Professional Life Cycle Logistics Certification – Level 2 23-Jul-14
     (Historical) AWCP Production, Quality and Manufacturing Level 2 28-Mar-13

Annual Performance Rating / Date

     OUTSTANDING ...............01-Apr-21
     FULLY SUCCESSFUL .....01-Jun-22
     Missing ...........................01-Jun-23
     Unacceptable ...................01-Jun-24



**Clothilda Taylor**

On 18 May 2022, Lamberth had enough. He decided to blow the whistle to Clothilda Taylor, SES, about Karan Williams' illegal contracting order for Lamberth to assist her in extorting funds from a DoD contractor.

Like Frank Serpico did in 1967, LTC Lamberth said NO, I won't become a party to fraud.

Clothilda Taylor decided that Lamberth was the problem, not Karan Williams. She refused to investigate.

This forced Lamberth to file a DoD IG complaint and complaints with other agencies on other Federal
employment laws that she and Karan Williams violated against Lamberth as discrimination, retaliation, and
harassment in the workplace.

We won't even mention the illegal shakedown of a DoD contractor, AKA: Contracting Fraud.



According to LTC Rick Lamberth, Clothilda Taylor, SES unilaterally assigned Lamberth to the Security and Facilities
Directorate within Business Operations on Monday, 31 July 2023, in order to continue to cover up for her and
Karan Williams attempted extortion of a DoD contractor.

One gets the feeling that Clothilda Taylor may have embarked on a similar shakedown of other DoD contractors.
There's no doubt that billions are wasted every year through Contracting Fraud in the Pentagon.

Lamberth had previously asked to be reassigned to another acquisition position, or Karan Williams' old position
that sat vacant for five months.

Clothilda Taylor refused Lamberth's request and hired another female from the outside. Taylor forced Lamberth
to work as a Security Specialist that he was not trained, qualified for. Being a good "soldier" however, Lamberth
complied.

Clothilda Taylor, SES assigned Lamberth to Mr. Scotty Altizer; then to Mr. Owen "OJ" Simpson to be his manager
who has no experience as a manager and also has apparently continued the retaliation against Lamberth creating
a toxic working environment.

Clothilda Taylor  is suspected of illegally, and in breach of Lamberth's contract, handed him over to OJ Simpson
despite his letters to her about the sexual harassment Lamberth was being subjected to.

It's one thing to be force to deal with incompetent management, but it's entirely another matter when your
supervisor wants a kiss from you.

OJ Simpson, his new supervisor in Security & Facilities, "awarded" Lambert his first and only "Unsuccessful Annual
Performance Review" out of Lamberth's entire forty-three (43) DoD year career! It was a bitter pill to swallow and
DoD managers knew it. They were hoping Lamberth would quit.

## LAMBERTH SAYS OJ SIMPSON GOT UPSET AFTER
## REBUFFING HIS SEXUAL ADVANCES

OJ Simpson is believed to have committed unlawful acts when Lamberth rebuked his repeated sexual advances. It was retaliation pure and simple.

Lamberth rebuked the sexual harassment, and once again, Clothilda Taylor decided not to investigate or assist Lamberth which it was her duty to do.

After Lamberth filed an official complaint of Sexual Harassment, OJ Simpson wrote a Letter of Reference (LOR) in order to assist Lamberth in leaving his directorate. They were doing all they could to "encourage" Lamberth to become so disgusted, that he would just not show up for work one day.

If those pressure tactics didn't work, his supervisors had plans to do a full frontal assault and terminate his employment at the Pentagon.

03 Sep 2024
**MEMORANDUM FOR RECORD**
SUBJECT: Letter of Reference

He has been a Program Analyst, job series 0343, since being hired into this position on 24APR22. His current position is in the Department of Defense Civilian Acquisition Workforce Personnel Demonstration Project, and he is in the NH-IV pay band. His current pay is equivalent to that of a General Schedule Grade 15, Step Two. Our office wishes him the best in his career aspirations.

OWEN J. SIMPSON
Deputy Director, Security and Facilities
Under Secretary of Defense for
Acquisition and Sustainment

## LAMBERTH LAYS OUT DOD MISMANAGMENT

LTC Rick Lamberth asserted the following seven points regarding what he views as chronic violations by Mrs. Clothilda Taylor and DoD management:

1. Denial of repeated, for my requests for Reasonable Accommodations IAW the ADA have been denied by Management.

2. Unilaterally transferred to a NH-0080-04, security analyst job without my permission or consent as a decades long NH-0343-04, Program Analyst with a PM Level 3 certification.

3. Given leeway for Mr. OJ Simpson to trade my SF-50 as a NH-0343-04 for approximately 30 years prior with high appraisal marks for success to a SF-50 as a security analyst, NH-0080-04 without my permission or OPM's permission and placed in my permanent file (eOPF). This erases all my awards for excellence, my career successes, my high appraisals, and places me in the position of not being able to get another job within the DoD.

4. I have been denied for at least 5 positions because of these actions from OJ Simpson and Management.

5. I have been given an unsuccessful appraisal by Mr. OJ Simpson after I complained of sexual harassment from him.

6. I have asked numerous times to be transferred into another Program Management / Acquisition position away from him as he makes me uncomfortable. Repeatedly, Mrs. Clothilda Taylor refused my requests to be moved from this sexual predator.

7. Mr. OJ Simpson refuses to let me go from his security job placement of me without the permission and Mrs. Clothilda Taylor has let him break the law with the help of the H.R. dept in changing my SF-50, electronic official personnel files, refusal of ADA accommodations and job transfer.

CURRENT ACTIONS:

Mr. Simpson has demanded that LTC Lamberth complete his appraisal goals for becoming a security analyst person for which he has no experience in security.

Lamberth is a Program Manager (PM Level 3), Logistician (LCL Level 2), Acquisition (ACQ Level 2), and a Production / Quality / Manufacturing (PQM Level 2)
and became that in combat serving with the Army for 32 years.

Lamberth asserts that at a minimum, this was age discrimination and disability discrimination due to his being a 100% Disabled American Veteran.

By demanding that Lamberth write his goals for a security position that he has no experience in was wrong. Lamberth wasn't refusing to cooperate, but rather such action would be in direct breach of his three-year contract.

This demand came immediately after Lamberth told him he could only do goals for his NH-0343-04 job series classification. Immediately afterward, Mr. OJ Simpson caused Lamberth's personnel file to reflect a change of position to the security job without his knowledge or consent.

If OJ Simpson is allowed to illegally breach Lamberth's contract and do an evaluation on him in this new security position, then he was attempting to fail Lamberth for the second consecutive annual performance review. It was an obvious set up leading to a dismissal.

Simpson could not evaluate Lamberth because he had Lamberth doing no work. Mr. OJ Simpson and Mrs. Clothilda Taylor, who remain silent on these actions, were trying to fire LTC Lamberth before his litigation is fully adjudicated.

LTC Lamberth asked for an immediate transfer away from Mr. OJ Simpson and his unit. He wanted the ability to work in another Program Management, Acquisition, Logistics, or PQM 3 position without having to have to consent to bullying and sexual harassment demands.

The solution was simple, allow Lamberth to go into another PM position. Clothilda Taylor had told Lamberth this was temporary assignment. Some surreptitiously entered documents into his personnel file without his knowledge or consent.

Do they need his consent? One would think so, especially if his ethically challenged supervisors were entering in bogus documents filled with lies and deceit. When the time came for them to stab Lamberth in the back, they would bring forth his personnel file to administratively deliver the coup de grâce.

Lieutenant Colonel Lamberth was being secretly set up for removal. They didn't like him. He wasn't a "team player." He would not become a party to contract fraud which made all those who were lining their pockets extremely nervous.

Lamberth discovered in his DoD Electronic Official Personnel Folder (eOPF) that OJ Simpson & Management fabricated and uploaded a new Civilian Career Brief dated 09Dec24.

OJ Simpson / Management changed Lamberth's Position Series and Title from NH-0343-04, Program Analyst; to NH-0080-04, Security Specialist. Lamberth stated, "they fabricated this for the second consecutive year."

All of his previous years are displayed as a NH-0343-04, Program Analyst; ALL of Lamberth's previous Annual Performance Ratings (APRs) are Fully Successful or Outstanding! All, except for this past year's invalid rating which was his one and only Unacceptable annual performance rating.

All of his Professional Licenses/Certification (listed) were for Program Management, Acquisition, Logistics, Manufacturing; NONE were for Security!

Lieutenant Colonel Rick Lamberth has been subjected to discrimination, retaliation, harassment, and violations of other federal laws. But, Lamberth did a very wise thing by hiring a lawyer to represent him in this tangled web of Pentagon deceit.

The arrogant supervisors in the Pentagon frankly don't care if he sues or not. Instead, they issued Lamberth with a "Notice of Proposed Removal."

## NOTICE OF PROPOSED REMOVAL

December 20, 2024
**MEMORANDUM FOR RICKY LAMBERTH**
SUBJECT: Notice of Proposed Removal

> This is notice that I am proposing to remove you from your position of Security Specialist, NH-IV, with the Defense Logistics Agency (DLA) for your Third Offense of Misconduct – Failure to Follow Instructions. This proposed action is to be affected no earlier than thirty (30) calendar days after the date you receive this notice.

> OWEN J. SIMPSON
> Deputy Director, Security and Facilities
> Under Secretary of Defense
> for Acquisition and Sustainment

Case 1:26-cv-00095-AJT-LRV    Document 1-1    Filed 01/13/26    Page 23 of 25 PageID# 27

1/29/25, 10:17 AM        VOLUME II – LTC RICK LAMBERTH vs. PENTAGON DEI HIRES: LAMBERTH CHOSE NOT TO BECOME INVOLVED IN CONT...

# SUMMARY:

The Pentagon has to have the power to remove people they feel are not adequately doing the job they have been assigned to.

But the question arises, what's the real reason Pentagon officials orchestrated the removal of LTC Rick Lamberth? Was it because he's a white man? Or, is it because he's a man?

More likely, he was fired because Lieutenant Colonel Rick Lamberth refused to become a party to the Pentagon's ingrained and tolerated contracting fraud schemes?

The most popular fraud on the taxpayers is the pay-to-play, or in simpler terms a kickback for the big guy or gal.

The fraud is so common place, such an accepted way of doing business, that anyone who becomes a potential threat is earmarked for removal.

Sure, entities like the Pentagon get rid of people they don't like, but no entity, government or private, should be allowed to illegally and unethically enter bogus information into an employee's file or doing any number of other clandestine, wrongful acts to set an employee up for dismissal.

How many others have been kicked to the curb in a similar manner?

In the old days, someone would plant drugs in the whistleblower's car, then allegedly receive an anonymous tip to search his auto on his way home one day.

There needs to be a full exposure of the truth either in a federal court of law, or by a "serious" DODIG office.

We always tell people, the only way you will have a chance to expose the truth is to file a federal law suit which diminishes the ability of the DoD to twist and distort the truth. An unbiased federal lawsuit may also expose the tactics the military uses on people they label as "undesirable."

The other problem is that Washington D.C., judges frequently attend the same parties as do the generals. Sometimes they become buddies. This means true justice is placed out of reach of anyone seeking redress. The court system becomes compromised.

Villains are protected, while whistleblowers are left with nothing but financial and emotional wounds for attempting to fight the evil that flourishes behind the walls of the Pentagon. It means that truth and justice is sadly, not the American way.

A truly outstanding former military officer, now a 100% disabled veteran like Rick J. Lamberth deserved a whole lot better than he got.

Case 1:26-cv-00095-AJT-LRV    Document 1-1    Filed 01/13/26    Page 24 of 25 PageID# 28

1/29/25, 10:17 AM          VOLUME II – LTC RICK LAMBERTH vs. PENTAGON DEI HIRES: LAMBERTH CHOSE NOT TO BECOME INVOLVED IN CONT...



**The military thought very highly of LTC Lamberth, but the DEI Hires at the Pentagon did not. For the Pentagon, fraud is an accepted practice, the cost of doing business. Unfortunately for the taxpayers, seldom are the perpetrators ever held accountable.**

---

IMPORTANT NOTE:

If anyone feels they have been treated unfairly or maligned in this or any other article we've written, contact us at once. We are glad to publish your side of the story. Don't embellish, just provide the truth and nothing but the truth.

MilitaryCorruption.com will continue to Fight for the Truth and Expose the Corrupt. With your help, we may be able to Fix What is Broken in America's military and the Veterans Administration.

BRIBERY    CONSPIRACY    DEI HIRES    FREE LOADING    PENTAGON COVERUP

POOR LEADERSHIP    SEXUAL HARASSMENT    STUPID POLICY    VETERAN THEFT



**« PREVIOUS**
HAVE DEI HIRES INFESTED THE PENTAGON?
HAS A CULTURAL CANCER DESTROYED THE

ARMED FORCES FROM WITHIN? RETIRED ARI
LIEUTENANT COLONEL FOUGHT BACK AGAII
CONTRACTING FRAUD INSIDE THE PENTAGC
HIS JOB AS A RESULT.