IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OWEN SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:26-cv-00095 (AJT/LRV) |
| | ) | |
| RICKY JOE LAMBERTH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), [Doc. No. 3] (the "Motion"). The Court held a hearing on the Motion on March 5, 2026, following which it took it under advisement. Upon consideration of the Motion, the memoranda in support thereof, [Doc. Nos. 4, 10] and in opposition thereto, [Doc. No. 7], the argument of counsel at the hearing, and for the reasons stated from the bench and below, the Motion is DENIED.

## I.    BACKGROUND

In this suit arising under the Court's diversity jurisdiction, Plaintiff Owen Simpson ("Simpson" or "Plaintiff"), a resident of Virginia, has sued Defendant Ricky Lamberth ("Lamberth" or "Defendant"), a resident of Maryland, for allegedly defamatory statements made at the Pentagon. The Complaint alleges the following facts:

Simpson is the Deputy Director of the Security and Facilities Office within the Directorate of Business Operations for the Under Secretary of War for Acquisition and Sustainment. [Doc. No. 1-1] ¶ 16. In his position, Simpson leads and supervises a team supporting over 1,800 personnel across approximately 90 facilities, overseeing enterprise Security, Facilities, and

1

Physical Security operations. *Id.* ¶ 17. From November 2023 until March 10, 2025, Defendant Lamberth was detailed to Simpson and reported to him as part of an agreement the Defense Logistics Agency, of which Lamberth is a member, had with the Under Secretary of War for Acquisition and Sustainment. *Id.* ¶¶ 18–19.

Lamberth worked remotely and Simpson and Lamberth only interacted in-person a total of three times during their 18-month professional relationship totaling approximately thirty minutes: (1) in the fall of 2023 at a meeting at the Pentagon; (2) in January 2024 at a meeting at the Pentagon; and (3) in September 2024, when Lamberth attempted to enter the Pentagon to pick up a handicap parking permit but was told by Simpson that "he could leave the Pentagon and return home and that they could coordinate the pickup of the handicap parking pass on a different date." *Id.* ¶¶ 21–24. Otherwise, Simpson managed Lamberth remotely and interacted with him in that manner on a daily basis. *Id.* ¶ 25. Lamberth's job performance and conduct were "not satisfactory" and Simpson "in conjunction with Lamberth's agency, reprimanded Lamberth for conduct unbecoming and found that his performance was unsatisfactory." *Id.* ¶ 26. Lamberth filed internal sexual harassment complaints against Simpson and accused him of being a sexual predator, but no action was taken against Simpson. *Id.* ¶ 27–28.

On January 29, 2025, an article[1] appeared on militarycorruption.com that contained statements, attributed to Lamberth, that Simpson is a "sexual predator" and that "Lamberth rebuked [Simpson's] repeated sexual advances" and Lambert was retaliated against because he did not "consent to bullying and sexual harassment demands." *Id*. ¶ 32. Plaintiff alleges "these statements were false because he only had three face-to-face interactions with Simpson – totaling roughly 30 minutes and every interaction was in a public setting, thereby extinguishing any

---

[1] The article is attached to the Complaint as Exhibit 1. *See* [Doc. No. 1-1] at 15.

possibility that Simpson could have sexually harassed Lamberth or preyed on him in a sexual manner." *Id.* ¶ 44. Plaintiff further alleges that "Lamberth filed several complaints against Simpson for sexual harassment and no action was taken against Simpson as a result of these false complaints, confirming that Lamberth's claims had no merit." *Id.* ¶ 45. Lamberth "either knew the statements he published concerning Simpson were false, or, believing them to be true, lacked reasonable grounds for such belief." *Id.* ¶ 60.

As a result of Lamberth's alleged defamation, Plaintiff alleges he suffered actual damages, including through reputational harm, emotional distress, and mental anguish, and is also entitled to presumed damages because the statements made by Lamberth impute an unfitness to Simpson to perform the duties of an office or employment of profit, or a want of integrity in the discharge of the duties of such an office or employment, and prejudice Simpson in his profession or trade. *Id.* ¶¶ 65–66. Simpson also seeks punitive damages on the grounds that Lamberth's statements are defamatory *per se* because they impute the commission of a crime involving moral turpitude. *Id.* ¶¶ 66–69.

## II.   LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In addressing a Rule 12(b)(6) motion, a court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the plaintiff. *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). However, to survive a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief

3

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted). Dismissal of a complaint is appropriate when the "well-plead facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While the well pled facts within a complaint are considered by the Court to be true, legal conclusions are not afforded the same presumption. *Id.* at 678.

### III.   DISCUSSION

Defendant Lamberth moves to dismiss for failure to state a claim under Rule 12(b)(6) on the basis that Plaintiff fails to allege facts to establish the first element of defamation, namely Lamberth's publication of the statements in question, and further fails to allege the second element, an actionable statement, as the Complaint does not satisfy Virginia's *in haec verba* standard. [Doc. No. 4] at 4–6. Alternatively, Lamberth argues that the statements cited in the Article are immunized under Virginia's anti-SLAPP" ("Strategic Lawsuits Against Public Participation") statute, because they reference matters of public concern. *Id.* at 6–10.

A.   <u>Plausibility of Plaintiff's Defamation Claim</u>

Under Virginia law, which applies to this action, a claim for defamation "must plead three elements: (1) publication of (2) an actionable statement with (3) the requisite intent." *Lokhova v. Halper*, 995 F.3d 134, 145 (4th Cir. 2021) (quoting *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018)). An actionable statement is both false and defamatory. *Id.* "At the 12(b)(6) stage in a defamation case, a court must accept as false any statement which the Complaint alleges to be false[,]" thus, "the key actionability question in deciding a motion to dismiss is whether the statements referenced in the Complaint are defamatory." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 659 (E.D. Va. 2015).

4

Virginia law imposes a heightened pleading standard to defamation claims, known as the *in haec verba* standard, which requires the plaintiff to plead the "exact words spoken or written." *Bennett v. Lundh*, 916 S.E.2d 356, 359 (Va. App. 2025). Whether to apply Virginia or federal pleading standards to defamation claims is unsettled in the Fourth Circuit. In an unpublished opinion, the Fourth Circuit has held that Rule 8 of the Federal Rules of Civil Procedure precludes the application of Virginia's "exact words" standard to defamation claims brought in federal court under diversity jurisdiction. *Wuchenich v. Shenandoah Mem'l Hosp.*, 2000 WL 665633, at *14 (4th Cir. May 22, 2000). And judges in this Court have been split as to whether to apply Virginia's *in haec verba* pleading standard to defamation claims. *Compare McGuire v. IBM Corp.*, No. 1:11CV528, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) ("The pleading standard for a defamation claim under Virginia law requires that the exact words spoken or written must be set out in the declaration in haec verba."); *Goulmamine*, 138 F. Supp. 3d at 670 (in context of "insulting words" claim, writing that defendant's "reference to the general federal standard of pleading is defeated by more specific federal jurisprudence on pleading insulting words and defamation under Virginia law"); *Fairfax v. New York Pub. Radio*, No. CR 1:22-CV-895, 2023 WL 3303125 (E.D. Va. Apr. 4, 2023), *aff'd*, No. 23-1497, 2024 WL 3935041 (4th Cir. Aug. 26, 2024) (granting motion to dismiss on defamation claim that was based on broadcaster's references to past accusations, thereby failing to "allege with specificity the defamatory statements made by [the defendant], as required by Virginia law"), *with Santos v. Christian*, No. 3:15CV476, 2015 WL 7738353, at *4 (E.D. Va. Nov. 30, 2015) (rejecting "exact words" pleading requirement and holding that FRCP 8 governs the sufficiency of plaintiff's defamation claims); *Nedrick v. Southside Reg'l Med. Ctr.*, No. 3:19CV202, 2020 WL 534052 (E.D. Va. Feb. 3, 2020) ("Under

5

federal standards, a plaintiff may, but need not, state the exact words spoken by the defendant to maintain a cause of action for defamation.") (collecting cases).

For the purposes of this Motion, the Court need not decide whether Virginia's *in haec verba* pleading standard applies since Plaintiff has alleged the "exact words spoken or written" by the Defendants, thereby satisfying both Virginia and Rule 8 federal pleading standards. In that regard, the article includes the headline "Lamberth says OJ Simpson got upset after rebuffing his sexual advances." [Doc. No. 1-1] at 19. In that section, the allegedly defamatory article states that "Lamberth asserted the following seven points," which included the statements, "I have been given an unsuccessful appraisal by Mr. OJ after I complained of sexual harassment from him," (Point 5) and "Mrs. Clothilda Taylor refused my requests to be moved from this sexual predator," (Point 6). *Id.* at 20–21 (quotation marks added). Although the statements do not use quotation marks, the statements clearly present as verbatim quotes from Lamberth and reference the exact words that Plaintiff alleges are defamatory.

For similar reasons, Plaintiff has plausibly alleged publication, which "requires a dissemination of the statement to a third party where that dissemination does not occur in a privileged context." *Brown v. Triton Sec., Inc.*, No. 1:04cv1544, 2005 WL 4663731, at *2 (E.D. Va. Mar. 23, 2005); *Santos*, 2015 WL 7738353, at *5 (holding that plaintiff had plausibly alleged publication because complaint had alleged that the defendant had published statements to a third party). Here, as discussed above, Plaintiff has plausibly alleged that Lamberth made statements concerning Plaintiff to the managers of the website, that then published them to the public.

B. Virginia's Anti-SLAPP Statute

In the alternative, Defendant moves to dismiss the Complaint pursuant to Virginia's Anti-SLAPP statute, Va. Code §8.01-223.2, which provides:

6

Immunity of persons for statements made at public hearing or communicated to third party. A. A person shall be immune from tort liability if the tort claim is based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party, . . . (iv) made by an employee against an employer where retaliatory action arising from such statements is prohibited by § 40.1-27.3.

Va. Code §8.01-223.2. Defendant further claims he is entitled to attorney's fees under Virginia's anti-SLAPP statute.

"Generally speaking, anti-SLAPP statutes aim to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). Virginia's anti-SLAPP statute provides immunity for a person who "solely" makes statements "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party." Va. Code § 8.01-223.2(A). Courts resolve the question by examining the "content, form, and context" of the speech where there is "at least some objective nexus to the public welfare, beyond the simple fact that its subject happens to be a public employee." *Rolofson v. Fraser*, 904 S.E.2d 284, 294 (Va. Ct. App. 2024).

Speech generally is about "a public matter" when it involves an issue of social, political, or other interest to a community and addresses topics such as, *inter alia*, (1) discriminatory institutional policies or practices; (2) the operations and policies of the department in question; or (3) the inability of the department to carry out its vital public mission effectively. *Id.* at 294. Conversely, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of *personal interest* do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Id.* (emphasis in original). As to the form and context of

7

the speech, speech directed to the public or "designed to reach as broad a public audience as possible" is considered to address a matter of public concern. *Id.*

    1.   *Virginia's Anti-SLAPP statute does not apply.*

Defendant argues that the article, which forms the basis for Plaintiff's defamation claim, concerns a matter of public concern because it places Lamberth's alleged statements about Simpson's alleged harassment in the context of Lamberth's larger allegations of fraud, mismanagement, and retaliation against the DOD and its managers. [Doc. No. 4] at 9.

In *Rolofson v. Fraser*, the Virginia Court of Appeals considered "whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest," and therefore whether the defendant's speech was protected under the First Amendment and Va. Code § 8.01-223.2. 904 S.E.2d at 294. The Court affirmed the lower court's holding that the defendant's statements that the plaintiff was "a threat to her health and safety" did not address a matter of public concern because they were made within the context of an internal grievance procedure; and rather than addressing a "systemic issue," they concerned the defendant's "personal allegations against [plaintiff] concerning his personal conduct." *Id*. at 295. ("Nothing in the record indicates that [the defendant] was attempting to speak with the public or that her statements addressed the Army's ability—as an organization—to meet its public mission."). Likewise, here, Lamberth's statements about Simpson that form the basis for Simpson's defamation claim are not "solely" about DOD mismanagement as a systemic issue but rather are directed toward Lamberth's personal grievances against Plaintiff. And although the platform on which Lamberth made these comments, militarycorruption.com, is a public forum geared toward a public audience, Lamberth's identification of Simpson by name has little relevance to the purpose of the article at issue, which according to Lamberth, was to expose the

"retaliation and harassment" Lamberth faced for "whistleblowing."[2] For these reasons, Virginia's anti-SLAPP statute does not apply to Lamberth's alleged statements.[3]

> 2. *Even if Virginia's anti-SLAPP statute applies to Defendant's statements, Plaintiff has alleged malice.*

Plaintiff contends that whether or not the relied upon statements pertain solely to a matter of public concern, Lamberth is not protected from tort liability under Virginia's anti-SLAPP statute because he knew or should have known the alleged statements were false and were made with reckless disregard for whether they were false. Defendant argues that he is protected from liability under Virginia's anti-SLAPP statute since the Complaint fails to allege that Lamberth acted recklessly to disregard the truth. [Doc. No. 4] at 11.

Virginia's anti-SLAPP statute does not apply to "any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false." Va. Code Ann. § 8.01-223.2(B). In other words, "if a statement is made with 'actual malice,' immunity cannot apply." *Petrak v. Sawyers*, No. 0110-24-4, 2025 WL 2956919, at *7 (Va. Ct. App. Oct. 21, 2025). "Actual malice" is a legal term of art; in this context, it does not mean ill will or intent to injure but rather that the defendant made the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964).

---

[2] By contrast, in *Fairfax v. New York Public Radio*, which Defendant relies on for support of their argument that Lamberth's statements are protected by Virginia's anti-SLAPP statute, this Court held that Virginia's anti-SLAPP statute applied because the complaint alleged statements made by a radio station, discussing "how allegations of sexual assault are treated when made against persons in positions of power (such as public officials)" and *in that context* referenced sexual allegations that had previously been made about the plaintiff. *Fairfax v. New York Pub. Radio*, No. CR 1:22-CV-895 (AJT/IDD), 2023 WL 3303125, at *3 (E.D. Va. Apr. 4, 2023), *aff'd*, No. 23-1497, 2024 WL 3935041 (4th Cir. Aug. 26, 2024) ("In sum, the Broadcast conveyed only the undisputed fact that [individuals] made sexual abuse allegations against [plaintiff] and that [plaintiff] had categorically denied the allegations, without any opinion or suggestion by [the radio hosts] that the allegations were true.").

[3] Because the Court concludes that Virginia's anti-SLAPP statute does not apply, it need not address Defendant's request for attorney's fees under the statute.

Here, the Complaint alleges in substance that Lamberth knew that the statements made to the author of the article were false, or believing them to be true, lacked reasonable grounds for such belief. [Doc. No. 1-1] ¶ 60. In that respect, the Complaint alleges that Lamberth and Simpson only had three face-to-face interactions over the course of their professional relationship, each occurring in a public setting and cumulatively lasting less than 30 minutes. [Doc. No. 1-1] ¶¶ 44, 58. In support of the statements' alleged falsity, Plaintiff further alleges that after Lamberth raised his claims against Plaintiff internally, they were investigated and no action was taken against Plaintiff. *Id.* ¶ 45. These factual allegations, which the Court must accept as true at the motion to dismiss stage, make plausible that Lamberth knew the statements about Simpson being a sexual predator were false when he made them to the publisher of the article or that he made them with reckless disregard of whether it was false or not.

## IV.    CONCLUSION

For the above reasons, it is hereby

**ORDERED** that the Motion be, and the same hereby, is DENIED.

Alexandria, Virginia
March 31, 2026

Anthony J. Trenga
United States District Judge